IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRANDYN JAMES CHARLES OLINGER,

          Plaintiff,

    v.

DR. WARREN ROBERTS, et al.,

          Defendants.

Case No. 3:25-cv-00950-MO

ORDER

MOSMAN, District Judge.

This prisoner civil rights case comes before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (#33) as well as his second Motion for Appointment of Counsel (#40). The second Motion for Appointment of Counsel (#40) is denied for the reasons identified in the Court's Order (#32) dated November 19, 2025. In addition, for the reasons identified below, the Court also denies Plaintiff's Motion seeking preliminary injunctive relief.

## **STANDARDS**

The standards for temporary restraining orders and preliminary injunctions are essentially identical. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n.

1 - ORDER

7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008). A plaintiff may also qualify for a preliminary injunction by showing that there are serious questions going to the merits of his claim and that the balance of hardships tips sharply in his favor, so long as the other *Winter* factors are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127. 1134-35 (9th Cir. 2011). A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and shall not be granted unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319-20 (9th Cir. 1994).

## DISCUSSION

Plaintiff alleges that prison officials are violating his Eighth Amendment right to medical care by denying him needed testosterone treatments, and he asks the Court to immediately order Defendants to begin providing those treatments. Plaintiff must establish that Defendants were deliberately indifferent to his "serious" medical needs. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000); *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). Deliberate indifference is shown only where an official "knows of and disregards an excessive risk of inmate health and safety . . . ." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Doty*, 37 F.3d at 546. Even if a prison official should have known of a severe medical risk but did not perceive that risk, a plaintiff cannot establish deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

2 - ORDER

Plaintiff declares that on May 9, 2025, prison officials referred him to an outside endocrinologist, Dr. Burge, who prescribed him testosterone treatments to address his low testosterone. Plaintiff's Declaration (#34), ¶ 3. He also states that Dr. Burge determined this to be a chronic illness that poses a threat to Plaintiff's life, a high risk for disability, and the potentially to significantly interfere with his bodily functions. *Id.* at ¶ 6. He claims that despite the urgency for such prescribed treatment, prison officials have not provided his needed testosterone therapy. He asks the Court to require Defendants to immediately provide him with Dr. Burge's prescribed treatments.

Michael Seale, the Chief Medical Officer of the Oregon Department of Corrections ("ODOC"), filed a Declaration in which he identifies the 2024 recommendations of the American Urological Association for treatment of low testosterone. Those recommendations provide that a diagnosis of low testosterone should be made only after two early morning measurements are taken that yield a total testosterone level below 300 ng/dL. Declaration of Michael Seale (#43), ¶¶ 7-8 (citing attached Guidelines Statement 2).

Plaintiff's medical records reveal that he had a low test result of 276 ng/dL on May 31, 2024, approximately one year before his appointment with Dr. Burge. *Id.* at ¶ 10. However, on May 20, 2025, ODOC medical personnel collected an early morning lab result showing Plaintiff's testosterone level was 403 ng/dL, placing him within the normal range. *Id.* at ¶ 12. Another early morning lab result less than two weeks later indicated another normal test result of 306 ng/dL. *Id.* at ¶ 13. Thus, the two lab results immediately following Plaintiff's May 9, 2025 appointment with Dr. Burge showed that his testosterone was consistently within a normal range.

3 - ORDER

On September 10, 2025, ODOC medical personnel again tested Plaintiff's testosterone level which indicated a 276.3 ng/dL reading. This was below the 300 ng/dL threshold, but the time of the law draw was not confirmed so it was unclear if it was an early morning draw. As a result, the lab draw was reordered for October 13, 2025 at the appropriate time in the morning to ensure the test's accuracy. *Id.* at ¶ 14.

In the meantime, on October 7, 2025, the Therapeutic Level of Care ("TLC") Committee denied Plaintiff's request for testosterone treatment because Plaintiff's lab results were not consistently below the 300 ng/dL threshold. *Id.* at ¶ 16. When personnel tested Plaintiff's testosterone level in the early morning of October 13, 2025, the results indicated 475 ng/dL, well within the normal range. *Id.* at ¶ 19.

During Plaintiff's return visit to Dr. Burge on December 12, 2025, Dr. Burge noted that although Plaintiff has "a history of low testosterone level and a high prolactin level," and also that Plaintiff was frustrated regarding the lack of testosterone therapy at ODOC, "Both Prolactin and Total Testosterone have normalized." Seale Declaration (#43), Exhibit 1, p. 17. Dr. Burge further provided that "Your most recent Testosterone level is normal (476)" advised Plaintiff to "Stay off Testosterone and Cabergoline for now. Re-assess results at future visits." *Id.*

Despite the foregoing, Plaintiff continues to assert in his Reply (#47) that Defendants are refusing to fulfill Dr. Burge's medical instructions and are, instead, proceeding with an unacceptable medical choice. To the contrary, it is not only clear from this record that Plaintiff is not in dire need of testosterone treatments, but it is also apparent that Plaintiff's testosterone levels do not indicate the necessity of such treatments. Moreover, although Plaintiff claims that testosterone therapy is required to stave off threats of disability or death, nothing in Dr. Burge's

4 - ORDER

May 9, 2025 report links this specific concern to a testosterone deficiency (which, again, Plaintiff does not have). *See* Seale Declaration (#43), Exhibit 1, p. 5. From a review of Dr. Burge's December 12, 2025 report, these concerns appear to be related to Plaintiff's microadenoma, not his testosterone level. *See id.* at 17. Indeed, it would make little sense for Dr. Burge to believe that Plaintiff's testosterone level posed lethal or disabling risks, all the while telling him that his level had stabilized and required no treatment.

On this record, Plaintiff has not shown a likelihood of success on the merits because he appears to have no serious medical need for testosterone treatments. Plaintiff also fails to demonstrate any risk of irreparable harm in the absence of testosterone treatments given that his testosterone levels are in the normal range. Preliminary injunctive relief is therefore not appropriate.

## CONCLUSION

Plaintiff's Motion for Temporary Restraining Order (#33) and second Motion for Appointment of Counsel (#40) are denied.

IT IS SO ORDERED.

2/12/2026
DATE

*Michael W. Mosman*
Michael W. Mosman
United States District Judge

5 - ORDER